COMMISSIONERS OF BUNCOMBE COUNTY v. W. R. PAYNE, County Treasurer.

(Decided December 6, 1898).

*County Bonds—Invalid when.*

1. The Act of 1858–'59, Private Laws, Chapter 166, authorizing the issue of county bonds not having been acted on until after the adoption of the Constitution of 1868, could then confer no such authority.

2. The adoption of the new Constitution, with the restrictions as to issue of municipal bonds, annulled all special powers remaining unexecuted, and not granted in strict conformity with its requirements. *Commissioners* v. *Call* at this Term.

3. A general Act authorizing counties to issue bonds for Rail Road purposes, would be invalid, especially when it is necessary to exceed the Constitutional limitation, to pay interest or principal.

4. The bonds issued in aid of the Asheville and Spartanburg Rail Road Co., in 1876–'7, were not issued in conformity with the requirements of the Constitution of 1868 and are therefore unconstitutional and void.

5. The payment of interest from year to year on the bonds is not an estoppel, and does not validate them.

6. If the bonds issued in 1876–'7 and '8 were invalid, the new bonds, in renewal, under the Act of 1893, Chapter 172, are equally invalid.

CIVIL ACTION to declare invalid and void $98,000 of Buncombe County refunding bonds issued in 1895 and to enjoin the payment of principal and interest by the defendant, the County Treasurer, heard before *Norwood,* J., at January Term, 1898, upon motion to continue the restraining order until final hearing.

Motion allowed and defendant appealed.

In consideration of the importance of the cause, both in respect to the principles concerned and the amount involved, the pleadings, judgment and exhibits from the court below are subjoined.

Be it remembered, that on the 28th day of December, 1897, a summons was duly issued out of the Superior Court of Buncombe County, directed to the Sheriff of said county, in the following words and figures :

BUNCOMBE COUNTY—In the Superior Court.

The Board of Commissioners for the County of Buncombe, (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver) and T. C. Brown,

AGAINST

W. R. Payne, Treasurer of Buncombe County.

⎰ Summons for Relief.

State of North Carolina.

To the Sheriff of Buncombe County—Greeting :

You are hereby commanded to summon W. R. Payne, Treasurer of Buncombe County, the defendant above named, if he be found within your county, to be and appear before the Judge of our Superior Court, at a court to be held for the County of Buncombe at the Court House in Asheville, on the second Monday of March, 1898, it being the 14th day of March, 1898, and answer the complaint, which will be deposited in the office of the Clerk of the Superior Court of said county, within the first three days of said term, and let the said defendant take notice that if he fail to answer the said

complaint within the time required by law, the plaintiffs will apply to the court for the relief demanded in the complaint.

Hereof fail not, and of this summons make due return.

Given under my hand and seal of said court, this the 28th day of December, 1897.

J. L. CATHEY,
*Clerk Superior Court.*

Received December 28, 1897. Served December 28, 1897, by reading the within summons and delivering a true copy thereof to W. R. Payne, Treasurer of Buncombe County, the defendant therein named.

W. M. WORLEY,
*Sheriff of Buncombe County.*

We acknowledge ourselves bound unto W. R. Payne, Treasurer of Buncombe County, the defendant in this action, in the sum of two hundred dollars, to be void, however, if the plaintiffs, the Board of Commissioners for the County of Buncombe, and T. C. Brown, shall pay to the defendant all such costs as the defendant may recover of the plaintiffs in this action.

Witness our hands and seals, this the 28th day of December, 1897.

H. LAMAR GUDGER, (Seal.)

NORTH CAROLINA,

BUNCOMBE COUNTY.

SUPERIOR COURT.

The Board of Commissioners for the County of Buncombe, (T. C. Brown, Chairman, S. J. Ashworth and T. H, Weaver, Commissioners) and T. C. Brown,
                    Plaintiffs.
        vs.

W. R. Payne, Treasurer of Buncombe County,
                    Defendant.

Complaint.

The plaintiffs complain and allege that T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, compose the Board of County Commissioners of Buncombe County, the plaintiff above named, and that the said T. C. Brown, a plaintiff, in his individual capacity is a resident, citizen and tax-payer of the County of Buncombe.

2. That the defendant, William R. Payne, is Treasurer of Buncombe County, having been duly qualified and elected, and is charged with the duty of receiving and disbursing the moneys belonging to said county.

3. That the General Assembly of North Carolina, in the year 1855, passed an act, entitled, "An Act to incorporate the Greenville and French Broad Railroad Company," which was ratified on the 13th day of February, 1855, and is printed in the laws of 1854–55 as Chapter 229; that in the year 1872 the General Assembly of North Carolina passed an act to amend an act to incorporate the Greenville and French Broad Railroad Company, which was duly ratified on the 15th day of January, A. D., 1872, and which is published in the laws of 1871–72 as Chapter 48; that in the year 1873 the

General Assembly of North Carolina passed an act to amend an act entitled "An Act to incorporate the Greenville and French Broad Railroad Company," ratified the 13th day of February, 1855, and act amendatory thereto, and that said last mentioned act was duly ratified on the 22nd day of December, 1873, and is published as Chapter 38 of the laws of 1873–74; that in the year 1874 the General Assembly of North Carolina duly passed an act to amend the charter of the Greenville and French Broad Railroad Company, which authorized its consolidation with the Spartanburg and Asheville Railroad Company of South Carolina, under the corporate name of the Spartanburg and Asheville Railroad Company, and which was duly ratified on the 9th day of December, 1874, and is published as Chapter 27 of the laws of 1874–75, and that in pursuance of the authority granted by the legislature of North Carolina and of South Carolina, the said two original companies were consolidated under the corporate name of the Spartanburg and Asheville Railroad Company.

4. That neither the said charter granted in the year 1855, nor any of the said amendments thereto, authorized or empowered either the Greenville and French Broad Railroad Company or the Spartanburg and Asheville Railroad Company to receive subscriptions of stock from any county, nor was any authority granted in the said charter enacted in 1855, nor any amendments thereto subsequently passed, to any county in the State of North Carolina, to subscribe to the capital stock of either of said companies, or to issue bonds in payment of such subscription.

5. That the plaintiff, T. C. Brown, who, as Chairman of the Board of County Commissioners, has the oversight of the records of the said Board, and free access to

them, has made diligent search, but has failed to find the minutes of the proceedings of the Board of County Commissioners of Buncombe County covering the period of time from the 6th of January, 1874, up to the 1st of January, 1876, and that plaintiffs believe and are satisfied, after said search, that the said records have been lost or destroyed.

6. That, as plaintiffs are informed and believe, in the year 1875 an election was held by virtue of an order of the Board of County Commissioners of Buncombe County, at which election a majority of the qualified voters of said county cast their ballots in favor of subscribing one hundred thousand dollars to the capital stock of the said Spartanburg and Asheville Railroad Company, and of paying for the said capital stock in coupon bonds of the County of Buncombe, in denominations of from fifty to one thousand dollars, and thereby did attempt to authorize a subscription of one hundred thousand dollars to the capital stock of said Spartanburg and Asheville Railroad Company, and in payment of such subscription, during the years 1876–77–78, as the work of completing the grading of the said railroad through the County of Buncombe progressed, the said Board of County Commissioners did issue and deliver in payment of said subscription the coupon bonds of the said county, ranging in denominations as aforesaid, which said bonds were in form as set forth in "Exhibit A," hereto attached, and that during the year 1877 the General Asssembly of North Carolina attempted to impart validity to the said subscription and the said issue of bonds by passing an act entitled, "An Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad Company," ratified the 27th day of February, 1877, and published as Chapter 40 of the private laws of

1876–77. But, as plaintiffs are advised, informed and believe, the said act was ineffectual to render valid the said subscription or to impart validity to the bonds issued as aforesaid, and that if the Legislature were empowered to render valid a void subscription and the issue of illegal bonds, the said act was ineffectual to cure the invalidity of said bonds because it appears from the Journals of the House of Representatives and Senate that the said act was passed on its second and third readings in both the Senate and House of Representatives on the same day, and without a call of the ayes and noes on either of said readings in said body.

7. That, as plaintiffs are informed and believe, said subscription was made and the said bonds were issued without color of authority from the Legislature of North Carolina other than that claimed to have been given by the Act of 1868–69, Chapter 171, Sections 1, 2, 3, 4 and 5, which were brought forward in *The Code* of North Carolina in the year 1883, as Sections 1996 to 2000 both inclusive, and that, as plaintiffs are advised, informed and believe, when the said Act of 1868–69 was ratified no part of the line of the said Greenville and French Broad Railroad Company had been completed and no part of the line of the Spartanburg and Asheville Railroad Company, subsequently consolidated with the said Greenville and French Broad Railroad Company, had been completed outside of the boundaries of the State of South Carolina, and that when said subscription was made and said bonds were issued as aforesaid, the citizens of said County of Buncombe had no pecuniary interest in the said Spartanburg and Asheville Railroad Company, nor any interest other than that which any citizen of the State of North Carolina has in any public improvement.

8. That, except such orders as may have been embodied in the minutes of the Board of County Commissioners of Buncombe County from the 6th day of January, 1874, to the 1st day of January, 1876, which have been lost or destroyed as aforesaid, all orders made by said Board in relation to the said subscription of $100,-000.00 to the capital stock of the Spartanburg and Asheville Railroad Company, or the bonds issued in payment for the same, are set forth in a paper hereto attached, marked "Exhibit B."

9. That, in the year 1893, the General Assembly passed an Act entitled, "An Act to authorize the County of Buncombe to fund its bonded indebtedness," which Act was ratified on the 25th day of February, A. D., 1893, and which authorized the issuance of $98,000 in coupon bonds of the said County of Buncombe "as a continuation of the bonded indebtedness of said County created for the purposes" of funding the bonded indebtedness of the said County, purporting to have been originally created by the issuance of $100,000.00 in bonds as aforesaid, in payment of said subscription, and that claiming to act under the authority purporting to be given in said last named act the Board of County Commissioners of Buncombe County did, on the 1st day of July, A. D., 1895, issue $98,000.00 in coupon bonds, all of the denomination of one thousand dollars, and bearing 5 per cent. interest per annum, payable semi-annually on the 1st day of January, and the 1st day of July of each year, the said bonds maturing on the 1st day of July in the year 1915, the said bonds being in form as set forth in a paper hereto attached, marked "Exhibit C," and the proceedings and the order of the Commissioners in relation to issuing them being set forth in a paper hereto attached, marked "Exhibit D."

By using the said bonds, issued, as plaintiffs are advised, informed and believe, without authority under the Constitution and laws of North Carolina, the Board of County Commissioners of Buncombe County, on the 1st day of July, 1895, were enabled to recall and get possession of the $98,000.00 in coupon bonds of the County of Buncombe theretofore issued as aforesaid, giving in exchange the said bonds purporting to be issued under the authority of the said Act of 1893.

10. That, as plaintiffs are advised, informed and believe, the Legislature of North Carolina had no power to authorize the issue of said bonds on the 1st day of July, 1895, for the purposes of paying the said invalid bonds which then upon their face purported to have become due.

11. That between the years 1877 and 1895, the Board of County Commissioners of Buncombe County every year levied and caused to be collected a tax sufficient to discharge semi-annually the interest purporting to accrue on the said bonds issued in 1875-76-77-78, and to take up the coupons thereto attached and $2,000.00 of the principal of said indebtedness, leaving only $98,000.-00 of bonds outstanding, and that since the 1st day of July, 1895, the said Board of Commissioners have, during each year, levied and caused to be collected, a sufficient tax to pay semi-annually the interest purporting to accrue on said $98,000.00 in bonds, last issue.

12. That the defendant, as Treasurer of the County of Buncombe, now has in hand a sufficient sum levied and collected for the purpose of paying the coupons attached to said $98,000.00 in bonds purporting to fall due on the 1st day of January, 1898, to-wit: about the sum of $2,450.00, and threatens to disburse the same by the payment of said coupons falling due on said 1st day of

January, 1898, unless restrained by the Court from paying said coupons.

WHEREFORE, plaintiffs demand judgment:

1. That the said $98,000.00 of bonds, all in denominations of $1,000.00, issued on the 1st day of July, 1895, be declared invalid and void.

2. That the defendant be perpetually restrained and enjoined from paying any part of the princiapl or interest purporting to be due, or hereafter to fall due, upon said bonds issued on the 1st day of July, 1895.

3. For such other and further relief as to the Court may seem just.

4. For costs of action.

A. C. AVERY,

MARK W. BROWN,

MOORE & MOORE,

*Attorneys for Plaintiffs.*

NORTH CAROLINA—Buncombe County.

T. C. Brown, Chairman of the Board of County Commissioners of Buncombe County, and one of the plaintiffs above named, maketh oath that the facts set forth in the foregoing complaint as upon the knowledge of the plaintiffs are true, and those facts stated on information and belief he believes to be true.

T. C. BROWN, *Chairman.*

Sworn to and subscribed before me this the 28th day of December, 1897.

H. L. MORRIS, J. P.

"EXHIBIT A."

UNITED STATES OF AMERICA.

State of North Carolina.

County of Buncombe.

No. . . .                                          $50.00

The County of Buncombe, in the State of North

Carolina, is justly indebted to .............., or bearer in the sum of Fifty Dollars, and will pay the same to the holder hereof on the first day of July, in the year of our Lord one thousand eight hundred and ninety-five, at the Town of Asheville, upon the surrender of this bond, the interest at the rate of Six per centum per annum to be paid semi-annually upon the first days of January and July in each and every year ensuing the date hereof, at the Town of Asheville, upon the delivery of the several coupons hereto subjoined as they shall respectively become due. The Commissioners of the County of Buncombe legally representing the body of the County aforesaid having made a corporate subscription to the capital stock of the Spartanburg and Asheville Railroad Company, which stock, together with all dividends accruing therefrom, is in the hands of trustees for the use of the holders of these bonds and pledged for the payments of the interest as it shall become due and for the final payment of said bonds and having ascertained the sense of the qualified voters thereof to favor a corporate subscription to the capital stock of said Railroad Company by an election duly held for that purpose have caused this bond to be issued to meet the instalments due upon the county subscription to said company, and the whole is done under the authority conferred and in conformity with the Constitution of the State of North Carolina and by authority of Acts of the General Assembly of the said State.

In testimony, Whereof, the said County Commissioners have caused this bond to be signed by their Chairman and countersigned by the Clerk of their Board and to be sealed with the seal of the said county.

Done at the Town of Asheville, in the year of our Lord eighteen hundred and seventy-five.

. . . . . . . . . . . . . . .
Chairman Board County Commissioners.

. . . . . . . . . . . . . . . . . .
Clerk.

"EXHIBIT B."

June 3, 1878.

Ordered that the bonds of Asheville and Spartanburg Railroad issue per estimate of engineer for the sum of $5,500.00.

July 1, 1878.

Ordered that the bonds of Asheville and Spartanburg Railroad Company be issued as the amount of engineers certificate filed for.

"EXHIBIT C."

(Form of Bond.)

UNITED STATES OF AMERICA.

State of North Carolina.

County of Buncombe.

No. . . . . .                          $1,000.00

FUNDING BONDS OF 1895.

The County of Buncombe, in the State of North Carolina, for value received, hereby acknowledges itself indebted to, and promises to pay the bearer hereof the sum of one thousand ($1,000.00) dollars in gold coin of the United States of America, of the present standard of weight and fineness, on the first day of July, nineteen hundred and fifteen, at the office of Messrs. Blair and Company, in the City of New York, in the State of

New York, together with interest thereon at the rate of five per centum per annum, payable semi-annually, in like gold coin, on the 1st day of January and July in each year, upon presentation and surrender of the annexed coupons as they shall severally become due. This bond is one of a series of ninety-eight bonds of like tenor, date and amount, issued by the County of Buncombe for the purpose of funding ninety-eight thousand par value bonds of said county lawfully issued in the year A. D., 1875 under a proper authority and by a vote of a majority of the qualified voters of said county, falling due July 1st, 1895, and are issued by authority of, in accordance with and full conformity to an Act of the General Assembly of North Carolina, entitled, "An Act to authorize the County of Buncombe to fund its bonded indebtedness," ratified the 25th day of February, 1893, and by virtue of the resolutions of the Board of Commissioners of Buncombe County, duly and regularly passed in pursuance of and in conformity to the aforesaid Act on the 19th day of June, 1895. It is hereby certified that all things essential to the validity of this bond have been duly performed; that all the requirements of law have been fully complied with by the proper officers in issuing this bond, and that the same is a valid and binding obligation upon the County of Buncombe. It is further certified that this issue of ninety-eight funding bonds constitutes a continuation of the bonded indebtedness of said county duly created in the year A. D., 1875, under a lawful and proper authority, and that all of the bonds funded by the issue of which this bond is a part were simultaneously with the issuance and delivery of this series of bonds called in, retired and cancelled by said county, and that the entire indebtedness of said county, including this issue

of bonds, is within the limit prescribed by the Constitution and laws of the State of North Carolina.

Given under the corporate seal of the County of Buncombe, and signed by the Chairman of the Board of County Commissioners of said County, and countersigned by the Clerk of said Board, this 1st day of July, 1895.

. . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . .
Chairman Board of County Commissioners.
Countersigned:

. . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(Form of Coupon Attached to the Foregoing Bond.)
$25.00                                                        $25.00

The County of Buncombe, in the State of North Carolina, will pay to bearer on surrender hereof, $25.00 in gold coin of the United States of America, at the banking house of Blair and Company in the City and State of New York, on the 1st day of. . . . . . . . . . . . . ., 18. ., being six months interest due that day on its funding bond No, . . . . . ., issued on the first day of July, 1895.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .
Chairman Board of County Commissioners.
. . . . . . . . . . . . . . . . . . . . . . . . . . . .
Clerk of Board of County Commissioners.

"EXHIBIT D."

Whereas, the General Assembly of North Carolina, by an Act entitled "An Act to authorize the County of Buncombe to fund its bonded indebtedness," ratified the 25th day of February, 1893, being Chapter 172 of the Public Laws of North Carolina, Session of 1893, duly authorized the Board of Commissioners of said County to issue and sell under the conditions and regu-

lations prescribed in said Act, the coupon bonds of the county to an amount sufficient to pay the unpaid and outstanding bonded indebtedness of said county, created in the year 1875, to pay for the said county's subscription to the stock of the Spartanburg and Asheville Railroad Company: and, whereas, said bonded indebtedness will become due to the extent of about $100,000.00 on the 1st day of July of the present year, now in pursuance of the authority conferred by said Act, the Board of Commissioners of Buncombe County do hereby order and direct that J. E. Rankin, Chairman of the Board, forthwith cause to be printed in such form and in such denomination as he may be advised is proper, bonds of the County of Buncombe to the amount of one hundred thousand dollars, to bear date when issued, and running twenty years from the 1st day of July, 1895, with coupons for interest attached, at a rate not exceeding six per centum per annum, payable, both principal and interest, at such place as he may think best, and such bonds, if he shall think proper, shall have expressed on their face that the principal and interest are payable in gold coin of the United States of the present standard of weight and fineness, and when issued said bonds shall be regarded as a continuation of the bonded indebtedness aforesaid, and shall be used for no other purpose. He is further authorized to enter into negotiations for the sale of the bonds to be issued as aforesaid, and may employ counsel for the purpose of advising and assisting him in preparing and selling said bonds. He will report to the next regular meeting of this Board, or to a called meeting what he may have done in this behalf, but no bonds shall be signed or issued until the further orders of this Board.

This February 4th, 1895.

### May 7, 1895.

Ordered, that J. E. Rankin, Chairman, if he find it necessary, proceed to New York and the other cities for the purpose of selling one hundred thousand dollars Buncombe County five per cent. gold refunding bonds, to be dated July 1st, 1895; said bonds having been authorized by Act of the General Assembly, Session 1893, Chapter 172, and by an order of this Board of County Commissioners, made February, 1895, the said J. E. Rankin, Chairman, being hereby empowered to negotiate the sale of said bonds upon such terms as he may deem best, and to sign contract for said sale.

### June 19, 1895.

Whereas, during the year 1875, the County of Buncombe by a vote of the majority of the qualified voters therein, became lawfully indebted in the sum of one hundred thousand dollars to pay for the subscription of said county to the stock of the Spartanburg and Asheville Railroad Company, which indebtedness was evidenced by the six per cent. coupon bonds of said county lawfully issued to the amount of one hundred thousand dollars, par value, of which said bonds, ninety-eight thousand dollars par value, are still outstanding and unpaid, and will fall due on the 1st day of July, 1895; and, whereas, J. E. Rankin, in pursuance of the authority on him conferred by a resolution of this Board heretofore duly passed on the 4th day of February, 1895, for the purpose of providing means for funding the said bonded indebtedness of the said county, entered into a contract with Blair and Company, bankers, of the city of New York, for the sale to said Blair and Company of the funding bonds of this county to an amount of one

hundred thousand dollars, par value, which contract is as follows, to-wit:

For and in consideration of the sum of one dollar, receipt of which is hereby acknowledged, we agree to sell to Messrs. Blair and Company of New York, one hundred thousand ($100,000.00) dollars refunding five (5) per cent. gold bonds of Buncombe County, North Carolina, to be dated July 1st, 1895, due July 1st, 1915, at par, and Messrs. Blair and Company hereby agree to purchase said $100,000.00 refunding five per cent. gold bonds of the Board of County Commissioners of Buncombe County, at par, same to be delivered to Messrs. Blair and Company by July 1st, 1895. It is further agreed that the principal and interest of said bonds shall be made payable at the office of Messrs. Blair and Company in the City of New York, and that Messrs. Blair and Company are to be appointed fiscal agents for the said County of Buncombe, and to receive in consideration of their services as fiscal agents $\frac{1}{8}$ per cent. commissions of all moneys paid out by them. It is further agreed that the Commissioners of said county shall pay to Messrs. Blair and Company the sum of five hundred dollars for expenses in preparing said bonds. It is further understood and agreed that Messrs. Blair and Company, in payment of the above five per cent. bonds dated July 1st, 1895, will honor all drafts of J. E. Rankin, Chairman of the Board of County Commissioners of Buncombe County to the amount of about ninety-eight thousand ($98,000.00) dollars, said drafts to be accompanied by the 6 per cent. bonds of Buncombe County, which mature July 1st, 1895, amounting to about ninety-eight thousand dollars and the balance, if any, up to one hundred thousand dollars will be paid direct by Messrs.

Blair and Company to the Treasurer of said County of Buncombe.

J. E. RANKIN,

Chm. Board County Comrs., Buncombe County.

BLAIR & COMPANY,

New York, May 11th, 1895.

Whereas, it has since appeared that there remain outstanding and unpaid at the present time but $98,000.00 of the said bonds of this county which fall due on July 1st, 1895, and, whereas, Blair and Company have agreed to purchase said ninety eight bonds at par, under all the conditions and provisions of the contract of May 11th aforesaid, now therefore, be it resolved by the Board of Commissioners of the County of Buncombe that the contract aforesaid be and the same is hereby approved, adopted and made binding upon the County of Buncombe, save only that 98 bonds instead of 100 bonds shall be sold and delivered to said Blair and Company under the said contract. That for the purpose of carrying out on the part of said county the provisions of the contract aforesaid, the coupon bonds of said County to the number of ninety-eight be forthwith lithographed or engraved substantially in the form and tenor following, to-wit: (For form of bonds see "Exhibit C," filed herewith.)

That said funding bonds when engraved or lithographed be signed by the Chairman of the Board, countersigned by the Clerk of the Board, and sealed with the seal of the County of Buncombe, and that the signature of said officers to the coupons on the said bonds be lithographed or engraved, and that said bonds be thereafter simultaneously with the requirements and cancellation of the bonds are intended to refund issued and delivered

123—29

to Blair and Company, in accordance with the terms and provisions of the contract hereinabove set forth. That the money received from the sale of the funding bonds hereinabove authorized be, and the same is hereby appropriated to the payment of the said 98 bonds of this county, falling due July 1st, 1895, and that said money shall be used for no other purpose whatsoever. That for the purpose of paying the interest on the 98 funding bonds hereinabove authorized, and of providing a fund for the payment of the principal of said bonds when the same shall become due, the Board of Commissioners and Justices of this county, or other persons or body having power and authority to levy taxes in said County, shall provide by taxation upon the taxable property of the county from year to year the amount necessary to meet the interest on said bonds, and to pay the principal thereof when they shall become due and payable, and said taxes shall be collected in like manner as other county taxes, and be paid into the hands of the County Treasurer, to be used for the purposes aforesaid. That all resolutions or parts of resolutions inconsistent herewith be and the same are hereby repealed. The above preamble and resolutions were unanimously adopted and ordered to be entered of record.

June 28, 1895.

In compliance with instruction from the Board of County Commissioners, J. E. Rankin, Chairman, and J. J. Mackey, Clerk, this day executed and delivered to the Southern Express Company, for Blair and Company, New York City, 98 funding bonds of said county, the proceeds of which to be used in payment of a like amount of bonds of said county issued in 1875 to Spar-

tanburg and Asheville Railroad Company.    These bonds
were signed and delivered in the presence of W. W.
Bernard, President National Bank of Asheville.    Bonds
numbered from 1 to 98 inclusive.    Adjourned.

J. J. MACKEY, Clerk.

| NORTH CAROLINA, | Superior Court.  At Chambers at Waynesville, N. C., the 29th day of December, 1897. |
|---|---|
| BUNCOMBE COUNTY. | |

| The Board of Commissioners for the County of Buncombe (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown, Plaintiffs. vs. W. R. Payne, Treasurer of Buncombe County, Defendant. | Restraining Order. |
|---|---|

On motion of Moore and Moore, Mark W. Brown
and A. C. Avery, attorneys for plaintiffs, and upon
reading the foregoing complaint used as an affidavit,
and exhibits thereto attached; it is considered and ad-
judged by the Court that upon the filing by the plain-
tiffs of an undertaking in the sum of two hundred and
fifty dollars, in form as required where restraining or-
ders are granted, the Clerk will cause a copy of the
complaint and this order to be served upon the defend-
ants as notice to show cause before the undersigned
Judge of the Twelfth Judicial District, at Chambers at
Waynesville, N. C., on the 17th day of January, 1898,
why an order shall not be granted restraining the said
defendant perpetually from paying any part of the in-
terest or principal of the bonds mentioned in the com-

plaint as issued on the 1st day of July, 1895, and that meantime the said defendant be enjoined and restrained from paying any part of the interest or principal of said bonds.

W. L. NORWOOD,
Judge of 12th Judicial District.

NORTH CAROLINA—Buncombe County.

To the Sheriff of said County of Buncombe, greeting:

The plaintiffs in the above order having filed the undertaking required by said order, which has been properly justified and duly approved, you are hereby commanded and required forthwith to execute said order upon the defendant named therein by delivering a copy of the foregoing complaint and a copy of said order to him.

This, the 29th day of December, 1897.

J. L. CATHEY,
Clerk Superior Court.

Received the above order December 31st, 1897, and served the same upon the defendant, W. R. Payne, Treasurer of Buncombe County, December 31st, 1897, by delivering true copies of the foregoing complaint and order to him.

This, the 31st day of December, 1897.

W. M. WORLEY,
Sheriff of Buncombe County.
By ROBERT GREENWOOD,
Deputy Sheriff.

STATE OF NORTH CAROLINA.

BUNCOMBE COUNTY.

} IN THE SUPERIOR COURT.

The Board of Commissioners for the County of Buncombe, *et al*

*vs.*

W. R. Payne, Treasurer of Buncombe County.

} Answer.

The defendant answering the complaint of the plaintiffs herein:

1. Admits the truth of the allegations contained in paragraph one of said complaint.

2. Admits the truth of the allegations contained in paragraph two of the said complaint.

3. Admits the truth of the allegations contained in paragraph three of said complaint.

4. That the allegations contained in paragraph four of said complaint are matters of public law, and speak for themselves; and the conclusions of law to be drawn therefrom are for the determination of the courts.

5. That this defendant has no information sufficient to form a belief as to the truth of the allegations contained in paragraph five of the said complaint, and therefore denies the same.

6. That this defendant admits the truth of so much of the allegations of paragraph six of the said complaint as allege, "that in the year 1875 an election was held by virtue of an order of the Board of Commissioners of Buncombe County, at which election a majority of the qualified voters of said county cast their ballots in favor of subscribing $100,000.00 to the capital stock of the Spartanburg and Asheville Railroad Company and to pay for the said capital stock in coupon bonds," as

therein set forth; but he denies the correctness of the conclusions of law therein alleged.

7. He denies the truth of the allegations contained in paragraph seven of said complaint.

8. That he has no knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eight of said complaint; and demands strict proof of the same.

9. He admits the truth of the allegations of facts contained in both paragraphs of paragraph nine of said complaint; but denies that anything was done by the Commissioners of Buncombe County contrary to the laws or Constitution of North Carolina.

10. That he denies the truth of the allegations contained in paragraph 10 of the said complaint.

11. That he admits the truth of the allegations contained in paragraph eleven (11) of said complaint.

12. He admits the truth of the allegations contained in paragraph twelve of said complaint.

For further, separate and distinct defences to the said action, he alleges:

I.

That he is Treasurer of Buncombe County, and acts under the direction of the Board of County Commissioners of said county, and has no personal interest in the event of this suit beyond his duty of citizenship, and an earnest desire faithfully to administer the public office he now holds; that he is entitled to have and therefore asks for the direction of the Court as to his duties in the premises; that the holders of the bonds set forth in paragraph nine of the said complaint are the real parties in interest as defendants, and should be made parties hereto, with the right to interpose such

defences as they may see proper, and he is advised and avers that so long as they are not parties they will not be bound by any decision of this Court in this case.

## II.

That he is informed and believes and so alleges, that the action of the Board of Commissioners of Buncombe County in submitting the question of subscription to the stock of the Spartanburg and Asheville Railroad Company to the voters of Buncombe County in the year 1875, was not under Section 707 of *The Code* of North Carolina, but under subdivision 4 of Section 8 of the Laws of 1868, Chapter 20, as printed on page 272 of Battle's Revisal, which is as follows:

"4. To submit to a vote of the qualified electors in the county, any proposition to contract a debt or loan the credit of the county under Section 7, Article VII, of the Constitution; to order the time for voting upon such proposition, which shall be upon public notice thereof, at one or more places in each Township in the county, and publication in one or more county newspapers, if there be any, for three months next immediately preceding the time fixed on; and such election shall take place, and be conducted under the laws as prescribed for the election of members of the General Assembly; and the Commissioners shall provide for giving effect, in case of the adoption of the proposition to the expressed will of a majority of the qualified voters in such election."

Which said Act the Legislature of North Carolina was authorized to enact by and under the Constitution of the said State. That the election held in 1875 for such subscription was duly authorized by a proper and legal resolution of the said Board of Commissioners, all the

requirements of the law were duly complied with, and all action and orders taken and made relative thereto were duly recorded in the proper books of the said county; and if the record of the same has been lost or destroyed, the fact of their existence at the time said election was held can still be abundantly proved by persons still living who saw and read the same. That the Register of Deeds for Buncombe County, who is ex-officio the Clerk of said Board, and not the Chairman of said Board, is the proper custodian of the records of the Commissioners of the said county. That at the said election the qualified electors of the said county adopted the proposition to authorize the subscription by said county of the said $100,000.00, to the stock of the said Railroad Company by a majority of all the qualified electors of said county; that such subscription was duly made by C. B. Way and M. E. Carter, agents for Buncombe County, on the 11th day of August, 1875, and the bonds of Buncombe County were duly issued in pursuance of said resolution and election. That said subscription, the issuing of the said bonds, and the levy of taxes in pursuance thereof were ratified and confirmed as "lawful and valid subscription and action of the County of Buncombe through proper authority, and binding on said county accordingly," by the General Assembly of North Carolina by an Act which was ratified on the 27th day of February, 1877, entitled, "An Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad, which said Act and the bill preceding it shows that it and they were duly signed by the presiding officers of the two Houses of the General Assembly, declaring it to have been read three times in each House." That this defendant is advised and believes that, as there is no alle-

gation in the said complaint setting forth that the Act of 1868, Chapter 20, nor the Act of February, 1893, authorizing the finding of the debt of Buncombe County, were not passed in accordance with Section 14, Article 2, of the Constitution of North Carolina, requiring the passage thereof in the House and Senate on three separate days and the recording of the yeas and nays on the second and third readings thereof, the said complaint states no cause of action.

For a further, separate and distinct defence to the said action the defendant alleges:

### III.

That said subscription to the capital stock of said Railroad Company was made pursuant to regular, valid and legal proceedings duly had by the Board of Commissioners of said Buncombe County, all of which were duly recorded in the proper books of said county, the subscription was legally and properly made, the bonds legally and properly issued and the taxes regularly and legally levied and collected for the payment of the interest falling due thereon from the date the said bonds were so issued until they were founded, when all said bonds were redeemed and cancelled by the said Commissioners of said Buncombe County, and the right to make, or the legality of, the said subscription can no longer be in question, since the same has not only been made, but paid in full, and are no longer a claim against said county.

### IV.

That this defendant is informed and believes that said County of Buncombe sold the bonds authorized to be issued under the Act of February, 1893, and received

the money therefor; that said bonds were issued by the legal and recognized authorities of the said county; that the said bonds were and are negotiable, and are now in the hands of innocent purchasers for value and without notice, which, under the Constitution of the United States and the decisions of the United States Supreme Court are a valid and binding obligation upon said county.

### V.

That this defendant is advised and believes that the plaintiffs as County Commissioners of Buncombe County, are estopped to deny the validity of the said bonds until they tender to the holders thereof the money they received therefor, both because they have paid the interest due thereon in January and July, 1897, and received and cancelled the coupons belonging to said bonds for said dates. That the Commissioners of Buncombe County are estopped to deny the validity of the said bonds for the reason that the Commissioners of the said county from 1875 till July, 1897, have paid the interest on the bonds originally issued on the said subscription, and those refunding them; the Legislature has twice ratified the same, and the people of the County of Buncombe have never questioned them.

### VI.

That at the time these refunding bonds were issued by the County of Buncombe, the Supreme Court of North Carolina had decided that where a bill had been duly signed by the presiding officers of the Assembly the Court can not go behind such ratification to enquire how such bill was passed, and, as under it the act of 1877, and the act of February, 1893, were duly certified to by

the presiding officers, the decision in the case of *Bank v. Oxford*, 119 N. C., p. 214, could not operate to make invalid bonds which were so issued, as that would in effect violate the obligation of contract and therefore the constitution of the United States. That the said bonds for the said subscription were valid and binding upon the said county when issued, as were those issued to refund them, and no decision of the Supreme Court of North Carolina overruling its former decisions can affect them, and the holders of the said bonds, being the only parties defendant in interest in this action will not be bound by a decision in this case, and the only effect of continuing this injunction will be to continue to injure the credit of Buncombe County and the State of North Carolina, already sadly damaged by the institution of this action. The bonds in controversy were issued not under the act of 1877, but under that of February, 1893, which independently of the act of 1877 was sufficient authority for the issuance of the same, the constitution of the State having been satisfied by a vote of the people, and the act of 1893 was a complete ratification of all that had been done before:

### VII.

That the people of Buncombe County had great personal and pecuniary interest in the construction and completion of the Spartanburg and Asheville Railroad at the time they voted to make such subscription, and as the property and population of said county and of the city of Asheville have more than doubled since its completion, the wisdom and value to them of making such subscription have been more than vindicated.

WHEREFORE the defendant prays judgment,

1. That the restraining order heretofore issued against

him in this case be dissolved, and that he be directed to make payment to the proper parties of the interest now due on the bonds in controversy.      :

2. That he go hence without day, and that he recover his reasonable costs.

3. For such other and further relief as in the nature of the case he may be entitled to.

EUG. D. CARTER,<br>
*Attorney for Defendant.*

NORTH CAROLINA—BUNCOMBE COUNTY, SS.:

William R. Payne, the Treasurer of Buncombe County, and the defendant above named, being duly sworn, deposes and says, that he has heard the foregoing answer read ; that the facts set forth therein of his own knowledge are true ; that the facts set forth therein on information and belief he believes to be true.

WILLIAM R. PAYNE,<br>
*County Treasurer.*

Sworn to and subscribed before me this the 25th day of January, 1898.

J. L. CATHEY,

*Clerk of the Superior Court of Buncombe County.*

STATE OF NORTH CAROLINA, ⎫
                          ⎬ IN THE SUPERIOR COURT.
     BUNCOMBE COUNTY. ⎭

The Board of Commissioners for the County of Buncombe, (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown,
          Plaintiffs.

*vs.*

W. R Payne, Treasurer of Buncombe County,
          Defendant.

Reply.

Replying to the new matter set up in the defendant's answer the plaintiffs say :

I.

That as they are advised, informed and believe, they have a right to maintain this action against the defendant above named and the holders of the bonds of the County of Buncombe referred to in the pleadings are not necessary nor essential parties to this controversy.

Plaintiffs are not informed as to what persons are the holders of the bonds and could not make such persons parties defendant without further information, but plaintiffs are advised that such bondholders or any of them have the right to move the Court to admit them as parties defendant if they so desire.

II.

The plaintiffs are advised, informed and believe that the section of the act of 1868, which is reprinted on page 272 of Battle's Revisal, and which is set forth in the second paragraph of the new matter set up in defendant's answer as constituting the delegation of authority by the Legislature to the Board of Commissioners for the County of Buncombe, to order and hold the election upon the question of subscription referred to in the pleadings, conferred no power upon said board to submit to the people of Buncombe County the question whether said county should subscribe to the capital stock of the Spartanburg and Asheville Railroad Company, but was intended to provide and did provide only the machinery for holding such elections in cases where the authority. to hold them had been granted by some other statute.

The other allegations contained in said paragraph two

are not true and are denied, except so much of said allegations as contain a repetition of what had already been admitted in the complaint of the plaintiffs.

### III.

That the allegations contained in the third paragraph of said new matter are not true.

### IV.

That the allegations contained in the fourth paragraph of said new matter are not true, except the allegation that the said bonds were sold.

### V.

That the fact set forth in the fifth paragraph of the said new matter are not true except the allegation that the Commissioners have paid interest on said bonds and the plaintiffs are advised, informed and believe that the proposition of law contained in said paragraph is not a correct and true statement of the law.

### VI.

That it is not true as alleged in paragraph six of said new matter that the questions of law involved in this controversy were adjudicated by the Supreme Court of North Carolina at any time prior to the rendition of the opinion in the case of *Bank* v. *Oxford*, 119 N. C., p. 214, nor is it true, as the plaintiffs are advised, informed and believe, that the said bonds are rendered valid by any such decision previously rendered.

It is not true, as alleged in said paragraph, that the Board of Commissioners of Buncombe County were lawfully empowered by the act of February, 1893, to issue the new funding bonds therein referred to, nor is it true that the said last named act could have the legal effect

of ratifying acts of the Commissioners which were *ultra vires* and void.

## VII.

It is not true that the citizens of Buncombe County had any pecuniary interest in the said Spartanburg and Asheville Railroad or any interest other than that which they had in common with the citizens of the whole State of North Carolina.

A. C. AVERY,
MARK W. BROWN,
MOORE & MOORE,
*Attorneys for the Plaintiffs.*

T. C. Brown, being first duly sworn, deposes and says: That he is one of the plaintiffs in the above entitled action ; that he is also a member of the Board of Commissioners for the County of Buncombe, and is the Chairman of said Board ; that he has heard the foregoing reply read and knows the contents thereof ; that the facts stated in said reply are of his own knowledge, true, except those facts herein stated on information and belief ; and that he believes those facts to be true.

T. C. BROWN.

Sworn to and subscribed before me on this the 26th day of January, 1898.

W. L. NORWOOD,
*Judge Superior Court.*

House of Representatives, Feb. 2, 1893.

Bills and resolutions are introduced, read the first time and disposed of as follows ;

By Mr. Starnes, H. B. 625, a bill to be entitled an act

to authorize the County of Buncombe to fund its bonded indebtedness.    Referred to  the Committee on  Finance.

House of Representatives, Feb. 4, 1893.
Reports of Committees :

By Mr. Roscoe from the Committee on Finance, the following bills with favorable recommendations :

H. B. 625, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness.

House of Representatives, Monday, Feb. 6, 1893.

H. B. 625, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness passes its second and third readings and is ordered engrossed and sent to the Senate.

Wednesday, Feb. 8, 1893.

By Mr. Wicker from the Committee on Engrossed Bills, reports that the following are correctly engrossed, and they are ordered to be sent to the Senate for the concurrence of that body.

H. B. 625, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness.

House of Representatives, Monday, Feb. 13, 1893.

A message is received from the Senate returning H. B. 625, a bill to be entitled an Act to authorize the County of Buncombe to fund its bonded indebtedness in accordance with an order of the House.    Placed on the calendar.

#### CALENDAR.

Upon motion of Mr. Starnes, H. B. 625, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness is recalled and placed on the calendar.

Mr. Starnes moves to reconsider the vote by which H. B. 625, S. B. 519, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness, passes its second and third readings. The motion is adopted. The bill passes its second reading and takes its place on the calendar, by the following vote. Those voting in the affirmative are: Messrs. Anderson, Arledge, Axley, Barlow, Blair, Brooks, Byrd, Carraway, Carter, Clarke, Covington, Crews, Crouse, Daniel, Dey, Ellis, Erwin of Cleveland, Erwin of Mecklenburg, Eubanks, Eure, Fuller of Durham, Fuller of Randolph, Gilmer of Guilford, Gilmer of Haywood, Harper, Harris, Hoffman, Holbrook, Holt, Hoyle, Hudson, Jetton, Jones of Caldwell, Jones of Camden, King of Bladen, King of Iredell, Lawhon, Lawrence, Lee, Long of Alamance, Long of Warren, McCurry, McGlohon, McLelland, McNeil, Merritt, Midgett, Moore, Nash, Norton, Oliver, Parker of Jones, Parker of Perquimans, Petrie, Pritchard, Robertson, Rowe, Rucker, Russell, Satterfield, Schulken, Self, Shepard, Shore, Smith, Starnes, Starr, Stevens, Tatem, Tathem, Taylor of Hertford, Thagard, Thomas, Vance of Buncombe, Vance of Mitchell, Venable, Venters, Walker, Ward, Watkins, Watson of Forsythe, Watson of Vance, White of Cabarrus, White of Gaston, Williams of Henderson, Williamson, Witherington, Wood. Ayes—89.

Those voting in the negative, none.

House of Representatives, Tuesday, Feb. 14, 1893.

On motion of Mr. Starnes H. B. 625, a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness is substitute for engrossed copy.

123—30

H. B. 625, A bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness, passes its third reading by the following vote, and is ordered sent to the Senate without engrossment. Those voting in the affirmative are :

Messrs. Adams, Allen, Anderson, Arledge, Axley, Barlow, Bellamy, Blair, Blue, Brake, Brooks, Byrd, Carraway, Clarke, Covington, Crouse, Daniel, Dey, Ellis, Erwin of Cleveland, Eure, Fuller of Durham, Gilmer of Guilford, Gilmer of Haywood, Hamilton, Harper, Harrell, Hoffman, Holbrook, Howard, Hoyle, Hudson, Jetton, Jones of Camden, King of Bladen, Lawhon, Lawrence, Lee, Lillington, McGlohon, McKenzie, McNeil, Merritt, Midgett, Moore, Nash, Norton, Oliver, Parker of Jones, Parker of Perquimans, Petree, Roscoe, Robertson, Rowe, Rucker, Russell, Satterfield, Schulken, Self, Shepard, Shore, Smith, Spruill, Starr, Stevens, Tatem, Tathem, Taylor of Granville, Taylor of Halifax, Taylor of Hertford, Thagard, Thomas, Vance of Buncombe, Vance of Mitchell, Venable, Venters, Walker, Watkins, Watson of Vance, Westbrook, Whitley, Wicker, Williams of Henderson, Williamson, Witherington, Wood. Ayes—86. Noes—Those voting in the negative are none.

House of Representatives, Saturday, Feb. 25, 1893.
Mr. Holt from the Committee on Enrolled Bills, reports the following bills and resolutions as properly enrolled, which are duly ratified by the Speaker of the House :

S. B. 652, H. B. 625, an act to authorize the County of Buncombe to fund its bonded indebtedness.

Senate Chamber, Feb. 8, 1893.
Messages were received from the House of Represen-

tatives transmitting the following bills and resolutions, which were read the first time and disposed of as follows :

H. B. 625, S. B. 519, bill to authorize the County of Buncombe to fund its bonded indebtedness. Referred to the Committee on Finance.

Senate Chamber, Feb. 10, 1893.
From the Commitee on Finance.

H. B. 625, S. B. 519, bill to authorize the County of Buncombe to fund its bonded indebtedness, recommending it do pass.

Senate Chamber, Feb. 13, 1893.
A message was received from the House of Representatives asking the return of H. B. 625, bill to authorize the County of Buncombe to fund its bonded indebtedness. The bill was ordered returned.

Senate Chamber, Feb. 15, 1893.
Messages were received from the House of Representatives transmitting the following bills and resolutions, which were read for the first time and disposed of as follows :

H. B. 625, S. B. 652, bill to authorize the County of Buncombe to fund its bonded indebtedness. Referred to the Committee on Finance.

Senate Chamber, Feb. 17. 1893.
From the Committee on Finance :

H. B. 625, S. B. 652, bill to authorize the County of Buncombe to fund its bonded indebtedness, recommending it do pass.

Senate Chamber, Feb. 21, 1893.
H. B. 625, S. B. 652, bill to authorize the County of

Buncombe to fund its bonded indebtedness, on its second reading. The bill passed its second reading by the following vote. Those voting in the affirmative ;

Messrs. Abbott, Armstrong, Atwater, Blalock, Brown, Burch, Campbell, Cheek, Cooper, Davis, Day, Fields, James, Jones, Leatherwood, Little, Lucas, Marsh, McDowell, McLauchlin of Iredell, McRae of Richmond, McRae of Robeson, McLauchlin of Cumberland, Means, Merritt, Newell, Olive, Owen, Patterson, Philips, Posey, Pou, Schoolfield, Sherrill, Stack, Twitty.—36.

Senate Chamber, Feb. 22, 1893.

H. B. 625, S. B. 652, bill to authorize the County of Buncombe to fund its bonded indebtedness, on its third reading. The bill passed its third reading by the following vote ; was ordered engrossed and sent to the House of Representatives. Those voting in the affirmative : Messrs. Abbott, Armstrong, Aycock, Battle, Blalock, Brown, Burch, Campbell, Cheek, Cooper, Cranor, Davis, Day, Fields, Gattling, James, Jones, King, Leach, Leatherwood, Little, Lucas, Marsh, McDowell, McLauchlin of Cumberland, McLauchlin of Iredell, McRae of Robeson, Means, Merritt, Mitchell, Newell, Olive, Owen, Parrott, Patterson, Philips, Potter, Pou, Schoolfield, Sherrill.—40.

Senate Chamber, Feb. 25, 1893.

Mr. Campbell from the Committee on Enrolled Bills, reports the following bills and resolutions as properly enrolled, which are duly ratified and sent to the office of the Secretary of State :

S. B. 652, H. B. 625, an act to authorize the County of Buncombe to fund its bonded indebtedness.

NORTH CAROLINA—DEPARTMENT OF STATE,

Raleigh, N. C., Jan. 15, 1898.

I, Cyrus Thompson, Secretary of State, do hereby certify that the foregoing and annexed five sheets contain a full and accurate transcript of the Journals of the Senate and House of Representatives of the State of North Carolina, for the Session of the General Assembly in the year 1893, of so much of said Journals as relates to H. B. 625, S. B. 519 a bill to be entitled an act to authorize the County of Buncombe to fund its bonded indebtedness, the title as published, of Chapter one hundred and seventy-two of the Public Laws of the Session of 1893.

Done in office at Raleigh, this fifteenth day of January, A. D. 1898.

CYRUS W. THOMPSON,
*Secretary of State.*

The Great Seal of North Carolina.

STATE OF NORTH CAROLINA,      } IN THE SUPERIOR COURT.
     BUNCOMBE COUNTY.

The Board of Commissioners for the County of Buncombe (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown,
         Plaintiffs,

*vs.*

W. R. Payne, Treasurer of Buncombe County,
         Defendant.

Harvey M. Ramseur maketh oath, that he was a civil engineer employed on the Western North Carolina Rail-

road, between Asheville and Murphy during the year 1869, and that no part of the grading on the line of railroad between Asheville and Spartanburg, known as the Spartanburg and Asheville Railroad or on the Greenville and French Broad Railroad had been done until after the end of the year 1868.

H. M. RAMSEUR.

Sworn to and subscribed before me January 26, 1898.

FRED MOORE,<br>*Notary Public.*

STATE OF NORTH CAROLINA,          }
    BUNCOMBE COUNTY.          } IN THE SUPERIOR COURT.

The Board of Commissioners for the County of Buncombe (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown,
Plaintiffs,
*vs.*
W. R. Payne, Treasurer of Buncombe County,
Defendant.

J. M. Green being first duly sworn deposes and says:

That he is now 57 years of age and has lived in Buncombe County, North Carolina, all his life; that when the County of Buncombe subscribed one hundred thousand dollars to the capital stock of the Spartanburg and Asheville Railroad Company said county had no interest in the railroad of said Spartanburg and Asheville Railroad Company, nor the railroad of the Greenville and French Broad Railroad Company which had shortly prior thereto been consolidated with said Spartanburg

and Asheville Railroad Company, a South Carolina corporation; and that when said county made said subscription to the capital stock of said railroad company no part of said railroad had been completed, and the construction of said railroad had not been commenced in the State of North Carolina.

J. M. GREEN.

Sworn to and subscribed before me on this the 25th day of January, 1898.

FREDERICK W. THOMAS,<br>*Notary Public.*

STATE OF NORTH CAROLINA,
                } IN THE SUPERIOR COURT.
   BUNCOMBE COUNTY.

The Board of Commissioners for the County of Buncombe (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown,
              Plaintiffs.

        *vs.*

W. R. Payne, Treasurer of Buncombe County,
             Defendant.

Undertaking upon Injunction.

KNOW ALL MEN BY THESE PRESENTS, That we, the Board of Commissioners for the County of Buncombe, and T. C. Brown, as principals, and H. Lamar Gudger, as surety, undertake and become bound to William R. Payne, Treasurer of Buncombe County, the defendant in the above entitled action, in the sum of two hundred and fifty ($250.00) dollars, lawful money of the United States of America, well and truly to be paid to him, his executors or administrators, to be void, however, if

the plaintiffs in the above entitled action shall pay to said defendant such damages not exceeding said sum of $250.00 as he may sustain by reason of the restraining order or injunction granted by his Honor W. L. Norwood, Judge, etc., on the 29th day of December, 1897, if the Court shall finally decide that said plaintiffs were not entitled to said restraining order or injunction.

This the 29th day of December, 1897.

THE BOARD OF COMMISSIONERS FOR THE COUNTY OF BUNCOMBE,

A. C. AVERY,

MARK W. BROWN,

MOORE & MOORE,

*Attorneys.*

H. LAMAR GUDGER.

NORTH CAROLINA—Buncombe County.

H. Lamar Gudger being first duly sworn deposes and says that he is a resident and free holder in Buncombe County, North Carolina, and is worth the sum of two hundred and fifty ($250.00) dollars over and above his debts and liabilities, and his property exempt from execution by virtue of the Constitution and laws of the State of North Carolina.

H. LAMAR GUDGER.

Sworn to and subscribed before me and the foregoing undertaking approved by me on this, the 29th day of December, 1897.

J. L. CATHEY,

Clerk Superior Court.

COMMISSIONERS *v.* PAYNE.

STATE OF NORTH CAROLINA, ⎱
⎰ IN THE SUPERIOR COURT.
    BUNCOMBE COUNTY.

The Board of Commissioners for
   the County of Buncombe, (T. C.
   Brown, Chairman, S. J. Ash-
   worth and T. H. Weaver, Com-
   missioners) and T. C. Brown,
              Plaintiffs, ⎬ Judgment.
       *vs.*

W. R. Payne, Treasurer of Bun-
   combe County,
           Defendant.

This cause coming on to be heard upon the return of
the notice to show cause why the restraining order
theretofore granted should not be continued to the hear-
ing was on the return day continued by consent of
counsel for the plaintiffs and the defendant to Satur-
day, the 22nd day of January, 1898, when it was again
continued by consent of counsel for the parties to be
heard at Chambers at Waynesville, North Carolina,
on the 26th day of January, 1898.

On said 26th day of January, 1898, at Chambers
at Waynesville, after hearing the pleadings and affida-
vits, as well as the exhibits, and copies of records of the
proceedings of the Board of Commissioners for the
County of Buncombe, and all the entries relative to the
Acts of 1876–77 and 1893, hereinafter mentioned,
contained in the written Journals of the General As-
sembly of North Carolina, and after argument of
counsel for the plaintiffs and the defendant, the Court
found the following facts:

1. That the corporation known as the Greenville and
French Broad Railroad Company was created by an Act

of the General Assembly of 1854–55, ratified the 13th day of February, 1855, and published as Chapter 229 of the Acts of 1854–55; that the said charter of said corporation was amended by an Act of the General Assembly of 1871–72, which was ratified on the 15th day of January, 1872, and is published as Chapter 48 of the Acts of 1871–72; that the said charter of said corporation was again amended by an Act of the General Assembly of 1873–74, which was ratified on the 22nd day of December, 1873, and published as Chapter 38 of the Laws of 1873–74; that the said charter of said corporation was further amended by an Act of the General Assembly of 1874–75, which was ratified on the 9th day of December, 1874, and published as Chapter 27 of the Laws of 1874–75, and which authorized its consolidation with the Spartanburg and Asheville Railroad Company, a South Carolina corporation, under the corporate name of the Spartanburg and Asheville Railroad Company.

2. That neither the said charter of said Greenville and French Broad Railroad Company nor any of the said amendments thereto authorized the corporation thereby created, either under the corporate name of the Greenville and French Broad Railroad Company or the corporate name of the Spartanburg and Asheville Railroad Company to receive subscriptions to its capital stock from any county or other municipal corporation, nor did any of said statutes empower or purport to grant authority to any county or other municipal corporation to make such subscriptions to the capital stock of said corporation under either of said corporate names, or to issue bonds or pledge its faith in order to pay for such subscription to said capital stock, and that no amendment passed by the General Assembly of North Carolina prior to the year 1877 ever authorized or pur-

ported to authorize a subscription by the County of Buncombe to the capital stock of either the Greenville and French Broad Railroad Company or the Spartanburg and Asheville Railroad Company or the issuing of bonds for the purpose of paying such subscription.

3. That no statute was offered in evidence or relied upon as authority to the County of Buncombe to subscribe to the capital stock of the Spartanburg and Asheville Railroad Company, except Sections 1, 2, 3, 4 and 5 of Chapter 171 of the Laws of 1868–69, and sub-division 4 of Section 8 of Chapter 20 of the Laws of 1868.

4. That it was admitted that in the year 1875 an election was held by virtue of an order of the Board of Commissioners for the County of Buncombe, at which election a majority of the qualified voters of said county cast their ballots in favor of subscribing $100,000.00 to the capital stock of the said Spartanburg and Asheville Railroad Company, and of paying for said capital stock in coupon bonds of the County of Buncombe in denominations of from $50.00 to $1000.00, said bonds being in the form set forth in "Exhibit A" to the plaintiffs' complaint, though the record of the said Board of Commissioners embracing the orders in reference to said election has been lost or destroyed. It was also admitted that the vote cast at said election was canvassed by the Board of Commissioners for the County of Buncombe, and that the said board found and declared and set forth upon their records that a majority of the qualified voters of Buncombe County had cast their votes in favor of said subscription.

5. That claiming to act by virtue of authority granted by the General Assembly of North Carolina under the said Acts of 1868 and 1868–69, and by virtue of the authority claimed to have been granted by the qualified

voters of Buncombe County at said election, the Board
of Commissioners for the County of Buncombe during
the years 1876, 1877 and 1878, as the work of grading
the line of railroad of said Spartanburg and Asheville
Railroad Company through said County of Buncombe
progressed issued $100,000.00 in coupon bonds of the
County of Buncombe in denominations as aforesaid.
The proceedings of the Board of Commissioners for the
County of Buncombe relating to the issuing of said
bonds, except such portions of said proceedings as have
been lost or destroyed as aforesaid are set forth in a
paper attached to the plaintiffs' complaint and marked
"Exhibit B."

6. That the General Assembly of North Carolina at
its session of 1876–77 passed an Act entitled "An Act
concerning the subscription of Buncombe County to the
Spartanburg and Asheville Railroad," which was rati-
fied on the 27th day of February, A. D. 1877, and pub-
lished as Chapter 40 of the Private Laws of 1876–77,
and that said Act of the General Assembly was not
passed in accordance with the requirements of Section
14 of Article II of the Constitution of North Carolina,
as appears from a certified copy of all the entries in the
Journals both of the Senate and House of Representa-
tives of the General Assembly of North Carolina at its
session of 1876–77, a copy of said certified copy of said
entries being hereto attached marked "Exhibit No. 1"
and made a part of this finding of fact.

7. It was shown by the uncontradicted testimony of-
fered by the plaintiffs on the hearing, and is therefore
found as a fact that no part of the line of the Spartan-
burg and Asheville Railroad Company lying within the
State of North Carolina had been completed prior to the
time when said election was held as aforesaid in the

year 1875, by order of the Board of Commissioners for the County of Buncombe upon the question whether a subscription should be made to the capital stock of said company or prior to the time when said subscription to said capital stock was attempted to be made by C. B. Way and M. E. Carter, who at said time purported to be agents for Buncombe County, and that no work whatever had been done in the way of grading or construction on any part of the line of said Spartanburg and Asheville Railroad Company lying within the State of North Carolina prior to the holding of said election and the making of said attempted subscription in the year 1875. Copies of the affidavit of J. M. Green marked "Exhibit No 2" and the affidavit of Harvey M. Ramseur marked "Exhibit No. 3," are hereto attached and made part of this finding of fact.

It is further found as a fact that when said election was held as aforesaid and said subscription was attempted to be made in the year 1875, neither the citizens of the County of Buncombe nor said county had any pecuniary interest in said Spartanburg and Asheville Railroad Company or its said projected line of railway or any interest in said company or said line other than such as they had in common with the other citizens of the State of North Carolina, unless it be that because said line of railway was projected when said election was held and said attempted subscription made, and because said line of railway was ultimately constructed through a portion of said County of Buncombe lying between the line of Henderson County and the city of Asheville, they felt a greater interest in said projected line of railway than the citizens of the other counties of the State.

8. That the General Assembly in the year 1893, passed

an Act entitled, "An Act to authorize the County of Buncombe to fund its bonded indebtedness," which Act was ratified on the 25th day of February, 1893, and published as Chapter 172 of the Public Laws of 1893, and which purported to authorize the issuance of $98,000.00 in coupon bonds of said county of Buncombe, "as a continuation of the bonded indebtedness of the said county created for the purposes aforesaid," for the purpose of funding the bonded indebtedness of said county.

9. That the Board of Commissioners for the County of Buncombe, claiming to act under the authority which said Act of 1893, purported to give to them, on the first day of July, 1895, issued $98,000.00 in coupon bonds, all of the denomination of $1,000, bearing interest at the rate of 5 per cent. per annum. payable in equal semi-annual installments on the first day of January and the first day of July of each year, until the maturity of said bonds on the first day of July, 1915. The said bonds are in the form set forth in "Exhibit C," attached to plaintiffs' complaint, and the orders of the Board of Commissioners for the County of Buncombe under which said bonds were issued are set forth in "Exhibit D" attached to plaintiffs' complaint.

10. That said $98,000.00 in bonds issued as aforesaid on the first day of July, 1895, were used and applied in payment of and funding the said $100,000 in coupon bonds issued in the years 1876, 1877 and 1878 as aforesaid and purported to have been issued for said purpose by virtue of authority conferred by the said Act of 1893.

11. That between the years 1877 and 1895 the Board of Commissioners for the County of Buncombe every

year levied and caused to be collected a tax sufficient to pay semi-annually the interest purporting to accrue on said bonds issued in the years 1876, 1877 and 1878 as aforesaid and to take up the coupons thereto attached and also to pay $2,000.00 of which purported to be the principal of said bonds.

Since the first day of July, 1895, said Board of Commissioners have levied and caused to be collected a sufficient tax to pay semi-annually the interest purporting to accrue on said $98,000.00 in bonds last issued.

12. The defendant as Treasurer of the County of Buncombe now has in his hands a sufficient sum of money so levied and collected for the purpose of paying the coupons attached to said $98,000.00 in bonds, to-wit: about the sum of $2,450, to pay the coupons attached to said bonds which purported to fall due on the first day of January, 1898, and had said money in his hands when the restraining order heretofore issued in this action was granted and was threatening to pay the same for said coupons purporting to fall due on said first day of January, 1898, on said $98,000.00 in bonds.

Upon the foregoing facts and on motion of A. C. Avery, Mark W. Brown and Moore & Moore, attorneys for the plaintiffs, it is ordered by the court:

1. That the defendant and his successors in office are enjoined and restrained from paying any part of the principal or interest purporting to be now due or hereafter fall due upon said bonds issued on the first day of July, 1895, as aforesaid, until the final hearing of this cause.

It was thereupon agreed by counsel for the plaintiffs and the defendant that the court might make its findings of fact and enter its judgment after said 26th day

of January, 1898, at Chambers at Waynesville, North Carolina.

W. L. NORWOOD,

Judge of the Twelfth Judicial District of North Carolina. At Chambers at Waynesville, N. C., January 28, 1898.

From the foregoing judgment the defendant appealed. Notice of appeal was waived and an appeal bond in the sum of $25.00 was adjudged sufficient.

W. L. NORWOOD,

Judge of the Twelfth Judicial District of North Carolina.

### "EXHIBIT 1."

House of Representatives, Wednesday, Jan. 31, 1877.

The following bills were introduced, read the first time and referred as follows: * * * ; and by Mr. Carter of Buncombe a bill concerning the subscription of Buncombe county to the Asheville and Spartanburg Railroad, all of which were referred to the Committee on the Judiciary.

House of Representatives, Friday, Feb. 2, 1877.

Mr. Carter of Buncombe from the Committee on the Judiciary reported favorably on:

H. B. 403, a bill to be entitled An Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad.

House of Representatives, Tuesday, Feb. 6.

On motion of Mr. Carter of Buncombe, the rules were suspended, and

H. B. 403, a bill concerning the subscription of Buncombe county to the Spartanburg and Asheville Railroad was put on its several readings and passed and was ordered to be engrossed and sent to the Senate.

House of Representatives, Wednesday, Feb. 7, 1877.

Mr. Geffroy for Committee on Engrossed Bills reported the following bills, resolutions as correctly engrossed which were transmitted to the Senate for concurrence:

H. B. 403, a bill to be entitled An Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad.

House of Representatives, Tuesday Feb. 27, 1877.

The following bills and resolutions, reported as correctly enrolled by Committee on Enrolled Bills, were duly ratified and transmitted to the Senate: .

H. B. 403, S. B. 528, an Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad.

Senate Chamber, Feb. 7, 1877.

Message from the House of Representatives:

H. B. 403, S. B. 528, bill concerning the subscription of Buncombe County in the Spartanburg and Asheville Railroad.

Placed on the Calendar.

Senate Chamber, Feb. 19, 1877.

H. B. 403, S. B. 528, bill concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad on second reading. On motion it was referred to Judiciary Committee.

Senate Chamber, Feb. 22, 1877.

Reports from Standing Committees were submitted as follows:

H. B. 403, S. B. 528, bill concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad, recommending that it do pass.

123—31

Senate Chamber, Feb. 24, 1877.

The following named bills and resolutions were acted upon as follows:

H. B. 403, S. B. 528, bill concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad on second reading.

Bill passed its second and third readings.

Senate Chamber, Feb. 27, 1877.

The following bills and resolutions, reported as correctly enrolled by Committee on Enrolled Bills, were duly ratified and transmitted to the office of the Secretary of State.

House Bill 403, S. B. 528, an Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad.

NORTH CAROLINA—Department of State,

Raleigh, N. C., January 15, 1898.

I, Cyrus Thompson, Secretary of State, do hereby certify that the foregoing, and annexed two sheets contain a full and accurate transcript of the Journals of the Senate and House of Representatives of the State of North Carolina for the Session of the General Assembly in the year 1877, of so much of said Journals as relates to H. B. 403, S. B. 528, a bill to be entitled An Act concerning the subscription of Buncombe County to the Spartanburg and Asheville Railroad, the title, as published, of Chapter 40 of the Private Laws of the Session of 1876 and 1877.

Done in office at Raleigh, this fifteenth day of January, A. D., 1898.

CYRUS THOMPSON,
*Secretary of State.*

The great seal of North Carolina.

COMMISSIONERS v. PAYNE.

## "EXHIBIT NO. 2."

STATE OF NORTH CAROLINA, ⎫
                    ⎬  IN THE SUPERIOR COURT.
BUNCOMBE COUNTY.    ⎭

The Board of Commissioners for
the County of Buncombe, (T.
C. Brown, Chairman, S. J. Ash-
worth and T. H. Weaver, Com-
missioners) and T. C. Brown,
        Plaintiffs,
            *vs.*
W. R. Payne, Treasurer of Bun-
combe County,
          Defendant.

J. M. Green being first duly sworn deposes and says:
That he is now fifty-seven years of age and has lived
in Buncombe County, North Carolina, all his life; that
when the County of Buncombe subscribed one hundred
thousand dollars to the capital stock of the Spartanburg
and Asheville Railroad Company said county had no
interest in the railroad of said Spartanburg and Ashe-
ville Railroad Company, nor in the railroad of the Green-
ville and French Broad Railroad Company which had
shortly prior thereto been consolidated with the Spartan-
burg and Asheville Railroad Company, a South Carolina
corporation; and that when said county made said sub-
scription to the capital stock of said railroad company
no part of said railroad had been completed, and the
construction of said railroad had not been commenced
in the State of North Carolina.

                            J. M. GREEN.

Sworn to and subscribed before me on this the 25th
day of January, 1898.

                     FREDERICK W. THOMAS,
                        *Notary Public*

## "EXHIBIT NO. 3."

STATE OF NORTH CAROLINA, } IN THE SUPERIOR COURT.

BUNCOMBE COUNTY.

The Board of Commissioners of Buncombe County, and T. C. Brown,

*vs.*

W. R. Payne, Treasurer of Buncombe County.

Harvey M. Ramseur maketh oath that he was a civil engineer employed on the Western North Carolina Railroad between Asheville and Murphy during the year 1868, and that no part of the grading on the line of railroad between Asheville and Spartanburg, known as the Spartanburg and Asheville Railroad, or on the Greenville and French Broad Railroad, had been done until after the end of the year 1868.

H. M. RAMSEUR.

Sworn to and subscribed before me January 26, 1898.

FRED. MOORE,

(Notarial Seal.)                                      *Notary Public.*

NORTH CAROLINA, } IN THE SUPERIOR COURT.

BUNCOMBE COUNTY.

The Board of Commissioners for the County of Buncombe, and T. C. Brown,

*vs.*

W. R. Payne, Treasurer of Buncombe County.

Defendants' Exceptions.

And now comes the defendant, William R. Payne, County Treasurer of Buncombe County, by his attorney,

Eugene D. Carter, and makes and files in this cause, pursuant to the provisions of Rule No. 27 of the Rules of the Supreme Court, exceptions to the findings of fact, conclusions of law and the judgment of his Honor, William L. Norwood, Judge, made at Chambers at Waynesville, N. C., on the 26th day of January, 1898, as follows:

1. To the findings of fact and the conclusions of law expressed therein, on the ground that they are not warranted by the pleadings, affidavits or other evidence in the cause, nor by the law.

2. To the ruling of his Honor granting injunction prayed for until the final hearing of this cause, upon the ground that as the correctness of said ruling is to be tested by the judgment appealed from, which was rendered solely upon the pleadings, affidavits, documents filed in the cause, and which judgment was not justified by anything appearing in said pleadings, affidavits, documents or any of them, and was therefore erroneous and void.　　　　　　　　　EUG. D. CARTER,
*Attorney for Defendant.*

STATE OF NORTH CAROLINA, ⎱ IN THE SUPERIOR COURT.
　　BUNCOMBE COUNTY.　　⎰

The Board of Commissioners for the County of Buncombe, (T. C. Brown, Chairman, S. J. Ashworth and T. H. Weaver, Commissioners) and T. C. Brown,
　　　　　　　　　　　　Plaintiffs,

　　　　　　　*vs.*

W. R. Payne, Treasurer of Buncombe County,
　　　　　　　　　　　Defendant.

Agreement.

In the above entitled action it is agreed between the

plaintiffs and the defendant that the pleadings, exhibits and affidavits and other documentary evidence offered at the hearing, together with the findings of fact and the documentary evidence referred to in the opinions of fact by the Court, the judgment of the Court, the restraining order granted on the 29th day of December, 1897, the summons, defendant's undertaking, defendant's exceptions and this agreement, shall constitute the record and case on appeal to the Supreme Court in said action.

This the 28th day of January, 1898.

A. C. AVERY,<br>
MARK W. BROWN,<br>
MOORE & MOORE,<br>
*Attorneys for the Plaintiffs.*

EUG. D. CARTER,
> *Attorney for the Defendant.*

*Messrs. Battle & Mordecai,* for defendant (appellant).
*Messrs. A. C. Avery, Moore & Moore* and *Mark W. Brown,* for plaintiffs.

CLARK, J., delivers the opinion of the Court.
FURCHES, J., and FAIRCLOTH, C. J., dissent.

CLARK, J.: The bonds whose validity is impeached by the present action contain no recital of the authority for their issue, but the order of the Board of County Commissioners upon which the question of their issue was submitted to popular vote in 1875, recites as authority Chapter 166, Pr. Laws 1858–'59 to "Amend the Charter of the Greenville & French Broad Railroad Co." That Act could confer no such authority after the adoption of the Constitution of 1868, which by Section 14, Article II, requires such acts to be passed in the manner therein prescribed. This is held in *Commissioners* v. *Call,* at this term and the reason there given is that

the adoption of the new Constitution with the restrictions as to issue of municipal bonds "annulled all special powers remaining unexecuted and not granted in strict conformity with its requirements." This has been repeatedly held by the United States Supreme Court. *Norton* v. *Brownsville*, 129 U. S., 479, 490 ; *R. R.* v. *Falconer*, 103 U. S., 821 ; *Wadsworth* v. *Supervisors*, 102 U. S., 534, 537 ; *Concord* v. *Savings Bank*, 92 U. S., 625.

Such was evidently the legislative view also for by Chapter 48, Acts 1871–'2, the General Assembly created a new body politic under the name and style of the Greenville & French Broad R. R. Co." and gave it all the rights and immunities conferred by the incorporation Act of 1854–'5 and the amendatory Act of 1858–'59. Whether this be treated as an entirely new act or as an attempt to revive and renew powers conferred by the prior Acts above recited it could grant no valid power to issue these bonds, or order an election upon the subject, because of non-compliance with the requirements of the Constitution, Article II, Section 14, in that the bill was not "read three several times in each House of the General Assembly and passed three several readings, which readings were not on three different days, and agreed to by each House respectively and the yeas and nays on the second and third reading of the bill were not entered on the Journal." *Commissioners* v. *Call*, *supra ; Charlotte* v. *Shepard*, 122 N. C., 602 ; *Rodman* v *Washington*, Id., 39; *Commissioners* v. *Snuggs*, 121 N. C., 394, and *Bank* v. *Oxford*, 119 N. C., 214, and *McGuire* v. *Williams*, at this term, in all of which this constitutional provision has been carefully considered.

The defendants further contend that conceding the invalidity of the Act of 1858–'59 and confirmatory Act

of 1871–'72 as authority to issue the bonds, still the Commissioners had authority to order the election by virtue of Chapter 171, Laws 1868–'69 (which is now the *Code*, Sec. 1996) but the County had theretofore no interest in the Railroad and no work was done thereon in this State till after the said election in 1875. The bonds were therefore not authorized because not "necessary to aid in the completion of any railroad." *Commissioners* ·v. *Snuggs, supra; Commissioners* v. *Call, supra.*

Besides the reasons given in those cases, there is this further consideration, that even if it be conceded that a general Act might authorize elections to issue bonds as to all railroads partly completed (in which counties were interested) at the adoption of the Constitution, to aid in their completion, this corporation was never organized till after the charter of re-incorporation of 1871 and hence could acquire no rights except those conferred in conformity with the provisions of the Constitution of 1868. Not only must the bonds be authorized by a popular vote (Const., Sec. 7, Art. VII) and the authority to hold the election granted by a statute passed in the mode required by Constitution, Section 14, Article II, but to exceed double the State tax (which is necessary) the special purpose must be authorized by a special Act of General Assembly. Const., Sec. 6, Art. V. A general Act authorizing any and all counties to issue bonds for railroad purposes would be invalid, especially when (as is the case here) it is necessary to exceed the constitutional limitation to pay interest or principal. *Tate* v. *·Commissioners*, 122 N. C., 812 (at p. 815); ·*Herring* v. *Dixon*, Id. 420 (at p. 424).

The bonds were issued in 1876–'7 and '8 by virtue of an unauthorized election and are unconstitutional and void—counties being expressly prohibited from issuing

bonds unless authorized in the manner prescribed by the Constitution. *Lewis* v. *Shieveport*, 108 U. S., 282 (at p. 286); *Ottowa* v. *Cary*, Id. 110, 123. The payment of interest on the bonds by the county authorities is not an estoppel nor does it validate them. Such payments were as much without constitutional warrant as the original issue and one illegal act can not validate another. *Doon* v. *Cummins*, 142 U. S , 366, citing (at p. 376) *Marsh* v. *Fulton*, 10 Wall., 676; *Loan Asso.* v. *Topeka*, 20 Wall., 655 ; *Daviess* v. *Dickinson*, 117 U. S., 657 ; *Norton* v. *Shelby*, 118 U. S., 425, 451.

There is an Act of the Legislature (and only one) that purports to validate these bonds. Pr. Laws, 1876–'7, Ch. 40. But that can have no effect because it was not passed in the mode required by Const., Art, II, Sec. 14. Whether if it had been enacted in the constitutional mode it could have supplied the original lack of power to submit the question to popular vote is a question not before us.

The later Act of 1893, Ch. 172, does not purport to validate these bonds. It simply recites that the bonds had been issued by proper authority (which is a judicial and not a legislative question) and under that erroneous impression, the legislature proceeded to authorize the issue of new bonds payable "in gold coin"—which is a deviation from the terms of the original bonds—to be exchanged for the said bonds, or sold and with the proceeds purchase or pay them. The act did not submit the issue of the new bonds to popular vote as was the case in *County of Jasper* v. *Ballou*, 103 U. S., 745, but specially provides that the new bonds "shall be regarded and held as a continuation of the bonded indebtedness created as aforesaid," so that if the bonds issued in 1876–'7 and '8 were invalid, the new bonds are equally so.

Whether or not a subsequent legislature can validate bonds issued upon the strength of an election which was held without authority it is very certain they can not be validated by inference from an Act authorizing a sale of new bonds (issued without a popular vote) to take up the first bonds. The validating Act must be a directed enactment.

The wisdom of the sovereign people has inserted in the organic law as a protection to tax-payers, the provision to be found in Section 14, Article II, and legislation coming within its scope is void unless the constitutional requirement is observed. It is put there for that purpose. Holders of county bonds, who have taken them without ascertaining if there was constitutional authority for their issue, can not expect the Courts to disregard the Constitution to save them from the consequences of their negligence. The judgment below is

Affirmed.

FURCHES, J., dissenting : The purpose of this action is to have declared void certain coupon bonds issued by plaintiffs in 1895, 1896 and 1897 to the amount of $98,000.

In 1855 the legislature passed an Act chartering a railroad company by the name and title of the "Greenville & French Broad Railroad Company." Acts 1854–'5, Ch. 299. This Act was amended by the legislature of 1858–'9, in which amended act it is provided "That it shall be competent for any county through which said road is intended to pass, to subscribe to the capital stock of said company any sum or sums that may be determined on by the Court of Pleas and Quarter Sessions of such county." Acts 1858–'9, Ch. 166.

The next Act of the legislature affecting the question

under consideration is the Act of 1868–'9, Ch. 171. This Act expressly authorizes the commissioners of any County to submit the question of subscription to a vote, and if a majority of the qualified voters of the County vote for the proposition, to make the subscription. This Act seems to have been literally complied with by the Commissioners of Buncombe in making this submission to the voters of the county.

The legislature of 1871–'2 passed another Act, as amendatory of the Act of 1855, chartering the Greenville & French Broad Railroad Company, in which new directors are appointed, and this Act closes by saying that the original Act and all other acts amendatory thereof are re enacted. Acts 1871–'2, Ch. 48.

The Legislature of 1873–'4, passed another amendment to the original act of 1855 chartering this road, appointing other incorporators, and giving further time to complete its organization. Acts 1873–'4, Ch. 38.

The legislature 1874–'5 passed another act ratifying a consolidation of the Greenville & French Broad Railroad Company with the French Broad Railroad Company, under the name of the "Spartanburg & Asheville Railroad Company." Acts 1874–'5, Ch. 27. And under this legislation and organization the Commissioners of Buncombe County, in 1875, submitted a proposition to the voters of said county to subscribe $100,000 to the capital stock of the "Spartanburg and Asheville Railroad Company," and to issue coupon bonds therefor. A majority of the qualified voters of said county having voted in favor of the proposition, the subscription was made, and the bonds issued and put upon the market.

These bonds ran for 20 years, and not having been paid, the Legislature of 1893 passed an Act authorizing the issue of new bonds in the place of the old bonds is-

sued in 1875, known as the Funding Act. Acts 1893, Chapter 172. It is admitted that this Act was passed according to the constitutional requirements. But there was no submission to the people, after the passage of this Act.

After the passage of the Act of 1893, the commissioners of Buncombe County issued the bonds they are now seeking to have declared unconstitional and void; sold them to Blair & Co. of New York at par value for cash, with which money they paid off and discharged the original bonds issued in 1875. It is these last bonds that the plaintiffs are now trying to avoid the payment of.

This case is very much like the case of *The Commissioners of Wilkes* v. *Call*, decided at this term, but different in some respects that the Court considered material in that case. In *Commissioners* v. *Call,* it appeared in the face of the bonds that they were issued under the Act of 1879, which was admitted not to have been passed according to the constitutional provisions so as to authorize their issue; and this was held by the Court to be an estoppel. But there is no such question as that in this case. The submission to the voters of Buncombe County was made: "In pursuance of the provisions of, and in accordance with the powers granted by an Act of the General Assembly of the State of North Carolina, passed at its session of 1858–'9 and ratified on the 16th day of February, 1859, entitled an Act to amend the charter of the Greenville and French Broad Railroad Company." The submission was in September, 1873. But before the bonds were issued in 1875, the Act of 1874 had been passed, consolidating this company with another railroad company and called the "Spartanburg and Asheville Railroad Company."

The bonds are payable to bearer, and it is stated in their face that they are issued to pay the subscription to the "Spartanburg and Asheville Railroad Company" —this being the new name of the consolidated company, made under the Act of 1874–'5.

It is admitted that, if the original bonds issued in 1875 were valid these bonds are valid. This is true, and the admission does the plaintiff no harm. And it may be that the present bonds are valid, even if the original bonds were not. But I do not propose to discuss that question now; I may do so further on.

I have discussed many of the questions presented in this case so fully in my dissenting opinion in *Commissioners* v. *Call*, at this term, that I shall not enter into so full a discussion in this case, as I otherwise might have done. But I refer to that opinion for arguments that might have been made here.

It seems to me that if the Acts I have cited are law, there can be no doubt but what these bonds are valid. And while I recognize the doctrine contained in *Bank* v. *Oxford*, 119 N. C., 214; *Charlotte* v. *Sheppard*, 122 N. C., 602, and *Commissioners* v. *Snuggs*, 121 N. C., 394, I propose to show that all these Acts are valid law for the purposes of issuing the bonds of 1875, except the Act of 1871–'2, and that that Act is not necessary to the validity of these bonds; and that there is no conflict between their validity and the doctrine in *Bank* v. *Oxford*, *Commissioners* v. *Snuggs* and *Charlotte* v. *Sheppard*, *supra*.

It is stated and admitted, as true, that the ayes and nays were not taken and recorded in the Journals upon the passage of the Act of 1858–'9 and the Act of 1871–'2. But it is not alleged, admitted or shown that they were not taken and entered, according to the require-

ments of the Constitution, upon the passage of the other Acts cited by me in this opinion.

When an Act is passed and ratified by the Legislature it is presumed that it was passed according to law. *Gatlin* v. *Tarboro*, 78 N. C., 119; *McGuire* v. *Williams*, at this term; and, if it is not, the burden is on the plaintiff (in this case) to show that they were not so passed. And it not being shown but what these Acts were passed according to the constitutional requirements, they must be taken to have been so passed. It must therefore be held that the ayes and nays were called on the passage of each one of these Acts, except the Act of 1858–'9 and the Act of 1871'–2. It makes no difference that the ayes and nays were not taken and recorded on the passage of the Act of 1858–'9, as there was no provision in the Constitution at that time requiring that it should be done.

This act of 1858–'9 provided that counties through which the road was intended to pass might subscribe to the capital stock of the company "if a majority of the lawfully qualified voters of such county voted for the subscription." But the second section of this Act provides that if a majority of the votes cast are for subscription, it shall be declared to have been carried. It is true that this election was to be ordered and held under the direction and supervision of the county court; and the submission to the voters in this case, as in *Commissioners* v. *Call*, was by the commissioners of the county. The commissioners are the successors of the county court in all such matters. It is so held in *Belo* v. *Commissioners*, 76 N. C., 489. and is expressly so provided in Section 1997 of *The Code*.

It is contended in the opinion of the Court that the Act of 1858–'9 was repealed by the Constitution of

1868.   There is no provision of the Constitution of 1868 repealing this or any other law of the State.   So if it is repealed, it must be by implication on account of the repugnance of the Act (the charter) to the Constitution. I admit that any part of this Act repugnant to the Constitution of 1868 could not be enforced on account of the repugnance.   But I deny that the Act was repealed by the Constitution.   If this were true no corporation could have been organized under its provisions, and the "Spartanburg & Asheville Railroad Company" would be without any legal authority—would be a nullity.   If this were true, no railroad company could be chartered, unless the Act chartering it passed according to Article II, Section 14 of the Constitution.   This cannot be law. The passage of the Act according to Article II, Section 14 of the Constitution, is only necessary where it is used as a basis for raising money by means of a corporation subscription and tax.   Suppose a railroad company is chartered by legislative enactment without complying with Article II, Section 14, and a company is organized thereunder (as I have no hesitation in saying it may be) can it be contended that if the Legislature passes another Act, as required by Article II, Section 14, of the Constitution, authorizing a subscription to said road, a submission made to the voters, and an issue of bonds under this Act, it would be unconstitutional and the bonds void?   That is the case.   The railroad company was organized under the Act of 1858-'9, but the provision of this Act authorizing counties to subscribe, was repugnant to the Constitution of 1868 in that it provided that a subscription might be made and bonds issued, upon a majority of those voting, and not upon a majority of the whole qualified vote of the county.   But the Act of 1868-'9 (now Section 1997 of *The Code*)

which was passed or presumed to have been passed according to Article II, Section 14 of the Constitution, supplied that defect in the Act of 1858–'59. This Act was not called to the attention of the learned Judge who tried the case. Had it been, he would, in my opinion, have decided it differently.

The Act of 1858–'9 and the amendments thereto (outside of the Act of 1871–'2) authorized the organization of the "Spartanburg & Asheville Railroad Company" and authorized Buncombe County to subscribe to the capital stock of said company; and the Act of 1868–'9 authorized a submission to the voters of said county as required by Article II, Section 14 of the Constitution, and in my opinion the bonds are valid.

There is another ground upon which it is claimed that their legality may be maintained; that of ratification.

There is no dispute but what the question of subscription was fairly submitted to the qualified voters of Buncombe County, and that a majority voted for the subscription. The Act of 1893, which is admitted to have been passed according to the requirements of Article II, Section 14 of the Constitution, expressly recognizes the old bonds as a valid indebtedness of Buncombe County, in the following terms: "That said indebtedness having been created in the year 1875, under proper authority, to pay for the subscription of the said county to the stock of the Spartanburg & Asheville Railroad Company." This Act further provides in Section 3 as follows: "And when issued they shall be regarded and held as a continuation of the bonded indebtedness of said county, created for the purposes aforesaid, and they shall not be exchanged or sold for less than their par value." It is contended that this isa

ratification of the Acts under which the original bonds were issued. This is an interesting question, but, as I am of the opinion that the bonds are valid for the reasons given by me, outside of the doctrine of ratification, I do not pursue the discussion further.

FAIRCLOTH, C. J., also dissents.